<i>The Court</i> gave judgment for the demurrant.

*Rodney*, for plaintiff.
*W. H. Rogers*, for defendant.

---

## WELCOME GRAY *vs.* The STATE OF DELAWARE.

The act conferring jurisdiction on the Mayor's Court of the city of Wilmington, to try assaults and batteries, and the other offences mentioned in Sec. 15, Art. 6, of the amended constitution, is constitutional.

That court has not jurisdiction over larcenies, riots, routs, and the other offences not mentioned in said section.

The legislature may take away the criminal jurisdiction of the Court of General Ses-sions, and transfer it to other courts.

In the creation of inferior courts under Art. 6, Sec. 15, the jurisdiction of such courts is necessarily confined to the offences mentioned therein.

The Mayor's Court of Wilmington is an *inferior* court within the meaning of the con-stitution.

WRIT of error to the Mayor's Court of the city of Wilmington.

This was an information filed by the attorney-general in the Mayor's Court for the city of Wilmington against Welcome Gray, the plaintiff in error, for an assault and battery. The defendant

pleaded *non cul.*, and for trial put himself on the court, which found him guilty and fined him five dollars.

The following errors were assigned to the record and proceedings below.

" And now to wit, this fifteenth day of September, 1833, comes the said Welcome Gray, by George Read, Jr., his attorney, and says, that in the record and proceedings aforesaid, and also in the giving of the judgment aforesaid, there is manifest error in this, to wit:

*First.* That the said Mayor's Court had no constitutional jurisdiction in the case.

*Second.* For that the Mayor's Court is not a judicial tribunal for the trial of the offence charged in the said information, according to the constitution.

*Third.* For that the legislature could not vest the power of judicial appointments in any corporation, private or public, and it was unconstitutional to do the same.

*Fourth.* For that the said Mayor's Court, so far as it regards the trial of the said offence, was unconstitutional, and its acts in the matter void.

*Fifth.* For that there was no indictment by a grand jury.

*Sixth.* For that the plaintiff in error, by the course of proceeding in said case, was deprived of his right of trial by jury.

*Seventh.* For that the legislature could not vest in the city council, the power of ordaining that trials in said court for such an offence, might be decided without indictment by a grand jury, or without a petit jury.

*Eighth.* For that any ordinance of said corporation dispensing with trial in said offence, was unconstitutional and void.

*Ninth.* For that judgment was rendered for the State of Delaware; whereas, it ought to have been rendered for the said plaintiff in error.

*Tenth.* For that no legal issue was made up in said case.

Wherefore, the said Welcome Gray prays that the said judgment, for the errors aforesaid, and other errors in the record, and proceedings aforesaid, may be reversed, annulled, and altogether held for nothing; and that he may be restored to all things which he has lost by occasion of the said judgment."

*Read, Jr.,* for plaintiff in error.

It is an extraordinary feature in the act of incorporation of the city of Wilmington, and in the constitution of their city courts, that judicial officers are to be appointed differently from all other officers, judicial or otherwise, of the state. The constitution of the state provides, in *Art.* 3, *Sec.* 8, that the governor " shall appoint all officers whose offices are established by this constitution, or shall be

established by law, and whose appointments are not herein otherwise provided for." Yet this act of assembly, the city charter, provides that the city council shall appoint these judges, notwithstanding the provisions of the constitution, and the extensive and important jurisdictions claimed for them. *Sec.* 17, (8 *Del. Laws,* 102.) "The mayor, alderman, and president of the city council, or any two of them, shall have full power and authority, and they are hereby vested with full power and authority, to hold and keep a court of record within the said city, four times in each year, to be regulated by ordinance of the said city council, by the name and style, and title of the Mayor's Court for the city of Wilmington." *Sec.* 4. "The mayor shall be elected by the city council from the body of citizens on the third Tuesday of October, for the term of three years; but may be removed by a vote of two-thirds of the whole council, in which case the cause of removal shall be entered on the minutes. The alderman shall be elected by the city council from the body of citizens," &c. "The members of council shall be elected by the citizens, by ballot, for the term of three years." These provisions are in violation of the 8th *Sec.* 3d *Art.,* of the constitution, and cannot be sustained. The same section requires that all officers of the state shall be commissioned in the name of the state, and under the great seal of state, and this is requisite even in case of elective officers, or where they are not appointed by the governor. Whoever may elect or appoint, the commission under the broad seal is the charter of office, the evidence, and the only constitutional evidence to the public as to who is the rightful officer. There is no such evidence in relation to these judges of the Mayor's Court. They derive their authority, or at least the evidence of their authority, and are known to the public only through the medium of a mere minute of the clerk of the city council. Can such officers be constitutionally qualified to act as judges? And not only the power of appointment of these judges is given to the city council, but the power of *removal* also.

2d. Was it competent to the legislature to organize such a court as this? The amended constitution gives power to the legislature to devolve on *inferior* tribunals the trial of certain minor offences.

"SEC. 15. The general assembly may by law give to any inferior courts by them to be established, or to one or more justices of the peace, jurisdiction of the criminal matters following, that is to say : assaults and batteries, keeping without licence a public house of entertainment, tavern, inn, ale house, ordinary or victualling house, retailing or selling without license, wine, rum, brandy, gin, whiskey or spirituous or mixed liquors contrary to law, disturbing camp meet-

ings held for the purpose of religious worship, disturbing other meet-
ings for the purpose of religious worship, nuisances, horse racing,
cock fighting and shooting matches, larcenies committed by negroes
or mulattoes, and the offence of knowingly buying, receiving, or con-
cealing by negroes or mulattoes, of stolen goods and things the sub-
ject of larceny, and of any negro or mulatto being accessary to any
larceny. The general assembly may by law regulate this jurisdic-
tion, and provide that the proceedings shall be with or without in-
dictment by grand jury, or trial by petit jury, and may grant or
deny the privilege of appeal to the Court of General Sessions of the
Peace: the matters within this section shall be and the same hereby
are excepted and excluded from the provision of the constitution,
that—' No person shall for an indictable offence be proceeded against
criminally by information '— and also from the provisions of the
constitution concerning trial by jury.' "

What was the meaning of this grant of power to the legislature to
establish other courts? Could they do so in this indirect manner, as
an incident to a corporation? The idea of a *court*, involves a suppo-
sition of *judges;* and if the legislature may establish courts, who shall
appoint the judges to compose these courts? Not the legislature, nor
the people at large, but the authority already provided in the consti-
tution—the governor. And in what sense is this Mayor's Court an
*inferior* court? for if not inferior, the legislature had no power to con-
stitute it. It is a local court, but a court of general jurisdiction on
the civil side, as the city court, and of most criminal ones in the
Mayor's Court; its process extends over the county, and perhaps over
the state. It is vested with extensive powers as a court of revision
and correction of the misprisions of public officers, powers which be-
long to superior courts. It is not enough to make a court *inferior*,
that a writ of error lies to it from another court; for that purpose,
even the Superior Court of this state is inferior.

3d. If the organization of the Mayor's Court were constitutional, the
legislature has exceeded its authority in the jurisdiction and powers
it has attempted to give to this court. Compare sections seventeen
and eighteen of the city charter, with section fifteen of the sixth ar-
ticle of the constitution.

"Section 17. *And be it further enacted, &c.,* That the mayor and
alderman and president of the city council, or any two of them, shall
have full power and authority, and they are hereby vested with full
power and authority, to enquire of, hear, try, and determine agreea-
bly to the laws and constitution of this state, all larcenies, assaults
and batteries, riots, routs, and unlawful assemblies, nuisances, and
other offences, which have been committed or shall be committed

within the said city, and to punish all persons, who shall be convicted of the same offences or any of them, agreeably to the laws of this state, and also to enquire of, hear, try, and determine all offences which shall be committed within the said city, against any of the laws, ordinances, regulations, or constitutions of the said city, and to punish the offender and offenders, as by the said laws, ordinances, regulations, or constitutions, shall be prescribed or directed; and also to impose fines on jurymen and others according to law, and to levy the same, and to award process, take recognizances for keeping of the peace, for being of good behavior, and for appearance, or otherwise; or to commit to prison as occasion shall lawfully require, without being accountable to the state, for any fines or amercements, to be imposed for the said offences or any of them, except such as are or shall be by law made payable into the state treasury, for offences against the state; and for the purposes aforesaid the said mayor and alderman, and president of the city council, or any two of them, shall have full power and authority, and they are hereby vested with full power and authority, to hold and keep a court of record within the said city, four times in each year to be regulated by ordinance of the said city council by the name and style and title of the Mayor's Court of the city of Wilmington, for the enquiring, hearing, trying and determining of the pleas and matters aforesaid, and for the punishing of those who shall be guilty thereof, and for the causing of all encroachments in the streets of the said city, and all nuisances to be removed; and for the punishing the offenders as the law and usage shall in such case require, and for the doing and performing all such other matters and things as are in and by this act made cognizable in the said court. The court of General Sessions of the Peace and Gaol Delivery shall not have jurisdiction of any of the matters hereby made cognizable in the said Mayor's Court.

SECTION 18, *And be it further enacted, &c.,* That the said Mayor's Court shall have full power and authority, to examine, correct, and punish the contempts, omissions, neglects, favors, corruptions, and defaults of all or any of the justices of the peace, sheriffs, coroners, clerks, or other officers, and also shall award process for levying all such fines, forfeitures and amercements, as shall be taxed, imposed, or set in the said mayor's court or estreated there; and generally shall administer justice and exercise the jurisdictions and powers hereby granted concerning all and singular the premises as fully and amply as the court of General Sessions of the Peace and Gaol Delivery may do by the amended constitution."

Neither the riots, routs, unlawful assemblies, larcenies, and other offences mentioned in the seventeenth section; nor the extensive powers

of correcting errors and punishing defaults of officers contained in the eighteenth section, are to be found in the constitution; much less is there to be found there, the power to oust and exclude the jurisdiction of the court of general sessions of the peace, which by the express terms of the constitution, has jurisdiction of these matters throughout the state. The grant of jurisdiction to the Mayor's Court is, therefore, void. And the result of this attempt of the legislature to make new tribunals for the administration of justice, has already introduced the trial of our citizens criminally without indictment, and without a trial by jury.

*R. H. Bayard*, for the state:

This is a writ of error to the Mayor's Court, of the city of Wilmington. The court was constituted by an act of the general assembly, passed Jan. 18, 1832. 8 *Del. Laws* 97.

The 19th section provides, that the court so constituted, shall have power to try offences enumerated in the fifteenth section of the sixth article of amended constitution, *without indictment*, and with or without *trial* by *petit jury*, as shall be provided by the ordinances of the city.

" Section 19. *And be it further enacted, &c.,* That the said Mayor's Court shall have full power and authority, to enquire of, hear, try, and finally determine, all those criminal matters enumerated, in the fifteenth section of the sixth article of the amended constitution, without indictment by grand jury, and with or without trial by petit jury, as shall be provided by the ordinances of the said city."

An information was filed at the June term of the Mayor's Court, 1832, against the plaintiff, to which he pleaded not guilty, and for trial put himself upon the court. The case was tried by the court, and the plaintiff found guilty, and judgment rendered against him.

The first four allegations of error in the proceedings below, may be reduced to a single point. 1. That the legislature have not the power under the constitution to constitute such a court. Or in other words, that the legislature cannot vest as a franchise in a public corporation, the right to hold a court for the administration of justice. This question may be divided into two parts. 1. Whether the power exists in relation to corporations created *before* the constitution was formed. 2. Whether it exists in relation to those created *afterwards*. The next five allegations may be reduced to a single point. That the legislature could not, in the *mode adopted*, dispense with the grand and petit juries in the class of cases mentioned in the fifteenth section of the sixth article of the constitution.

If the affirmative of these propositions be established, there is no error.

A state is a *body politic,* or society of men united together to promote their mutual safety and advantage, by means of their union. *Vat.* 15.

The joint understanding is the *legislative* power; the joint strength is the *executive* power.  2 *Ruth.* 43–4.   One directs, the other acts. The people not being able to exercise this joint understanding or legislative power collectively, have recourse to representatives for that purpose.    It follows, therefore. that to invest any body of men with the legislative power simply, would be to invest them with the power of declaring what was proper to be done in that society, without appeal, and without control.    Hence arises the necessity for a written constitution, which shall limit the exercise of the legislative power.

A state constitution is not a charter which *bestows* powers, but which *limits* them.   In this respect it is different from the constitution of the United States.   The rule of construction in the two cases is directly opposite.   In a government of limited powers it has none but those *expressly granted,* or necessarily *incident* to those granted. In a government of general powers, it has all powers not *expressly prohibited.*   And as the legislative power of the state is the superior power, it would in its nature be *absolute,* and might absorb all others. 2 *Ruth. Sec.* 71.

The second article of the constitution vests the legislative power in a general assembly.   The object of the rest of the constitution is to restrain and limit the power thus given, and to protect the executive and judicial powers from invasion within the spheres which have been allotted to them.

The first article of the constitution protects the civil and political rights of the citizen.   The second points out the mode in which the legislative power shall be exercised.   The third explains and protects the executive power.   The sixth explains and protects the judicial power.

The executive power is, in all free governments, divided into the internal and external executive power.  2 *Ruth. Lec.* 50-1.   The internal executive power is the *judicial* power.   In times of tranquility and peace, this is by far the most important branch of the executive power; regulating the whole circle of social duties, protecting the citizen in his positive and relative rights, his life, his property, and his social claims : in a word sustaining his rights and remedying his wrongs.   The *judicial* power is also the expounder of the constitution; which results from the fact, that there is is a written constitution, which being intended as a check on the legislative power, is the lex suprema to which reference must be had in the construction

of any law made by the latter. It is an improvement of modern times to separate the *internal* from *external* executive. The sixth article of the constitution does this, and protects the *judicial* power. It declares that the judicial power shall be vested in certain enumerated courts, and such *other* courts as shall be established by a vote of two-thirds of the general assembly. The effect of this section is to restrain the legislative power, unless exercised by *two-thirds*. The question then arises, whether there is any thing in the constitution to prevent the establishment of a municipal court, by granting it as a franchise to a public corporation? As a constitution is merely a collection of general principles, it has necessarily reference to some preconceived ideas, some *jus commune* for interpretation—the common law. *Dupon. on Juris*. 86, 92. How did this matter stand at common law, before the formation of any constitution? By the common law, the whole executive power was vested in the king; that is to say, the *judicial power*, which is the internal executive, as well as the external executive power. 1 *Bac. Abr.* 555; *Tit. Courts, B.*; *Wood Inst.* 447. The right to hold a municipal court was a *franchise* which might be granted to a corporation by the common law. 1 *Kyd, on Corp.* 70, 182, 327; *Wood Inst.* 205; 2 *Bl. Com.* 37; 3 *Bl. Com.* 30, 80; 4 *Bl. Com.* 272; *Wood Inst.* 111; *Finch*, 166; 1 *Bac. Abr.* 505; *Tit. Corp. D. ibid.* 558; *Tit. Courts D.* Accordingly, the franchise of acting as justices of the peace was granted to this very corporation by its charter in' 1739; 1 *Del. Laws*, 481, confirmed in 1772. *Sect.* 31; 1 *Del. Laws*, 499. Also the franchise of a common jail. 1 *Del. Laws*, 431. On our change of government the common law by the constitution, then formed, was preserved as the substratum of our laws. *Art.* 25, *Const.* 1776. And the law of 1772, in relation to the city charter, was preserved by *Art.* 24. There is no change in the common law upon the subject, up to the constitution of 1792. The constitution of 1792 separates the *judicial power* from the *executive*, and vests it in certain enumerated courts, justices of the peace, and such *other* courts as the legislature may establish. *Art.* 6, *Sec.* 1. *Sec.* 10 of *Art.* 8, preserved the common law and other laws. *Sec.* 9 of *Art.* 8, expressly preserved the chartered rights of this city: one of which was, that the burgesses should have the power of justices of the peace.

The effect of the sixth article of the constitution, section 1, was to change the *source* of judicial power, not the *mode* of its existence. By the common law, the king was the source; by the constitution, the people. Under the *common law* its *mode* of existence was in the courts, superior and inferior, the latter including corporation courts, which were said to exist in the form of a franchise. Under the con-

stitution, its *mode* of existence is also in the courts, superior and in-ferior; and there is nothing to alter the common law doctrine, that it may exist as a franchise in a corporation. On the contrary, the judicial power is expressly vested in justices of the peace, who are as substantive a part of the judicial system as the supreme court. *Sec.* 1, *Art.* 6. And the 9th *Sec.* of *Art.* 8, expressly preserves the rights, privileges, and immunities of the city; one of which is the franchise of acting as justices of the peace : by which the principle is recognized that judicial power may exist as a franchise in a cor-poration.

The charter of 1809 is founded on and recognizes this principle. *Digest,* 676. The 10th *section* gives the burgesses all the powers of justices of the peace ; and the 25th *section* continues all the powers of the former charter.

The amended constitution of 1831, makes no change in this par-ticular, the judicial power being vested in same manner. *Art.* 6, *Sec.* 1 ; the *rights* of corporations and the *laws* preserved. *Art.* 7, *Sec.* 8, 9. The same principle exists in Pennsylvania, the constitu-tion of which state is precisely similar to our own, of which the Mayor's Court of Philadelphia is an example. If there were any thing incongruous in the position, would it have escaped all the learning and acuteness of the profession in that state?

It is objected that the 8th *section* of the 3d *article*, declares that the governor shall *appoint* all *officers* whose offices are established by the *constitution* or by *law.* I answer : 1, That the officers re-ferred to are state officers, not the officers of a corporation; 2, That no office is created, but a *franchise* granted to a corporation.

If he be an officer under the constitution, he must be a *judicial offi-cer* ; 4 *Dal. Rep.* 229 ; *Commonwealth* vs. *Dallas.* But if the power of appointment did belong to the governor, that would not prove that the franchise could not be granted or the court created; and the *right* of the judges cannot be tried on a writ of error. 2 *Term,* 37. The 8th *Sec.* of 3d *Art.* could not, however, affect this case, since the 8th *Sec.* of the 7th *Art.* expressly preserves the rights of the cor-poration, one of which is to appoint its own officers; and the case falls within the exception of being therein otherwise provided for.

Before the formation of the constitution of 1792, *all misdemeanors* might have been prosecuted by information at common law. 4 *Bl. Com.* 308. The 8th *Sec.* of the 1st *Art.* of the *Const.* 1792, re-strained such prosecutions to cases arising in the land and naval forces. The 15th *Sec.* of the 6th *Art.* of the *Amend. Const.*, excepts out of a similar provision in the 8th *Sec.* of the 1st *Art.*, a certain class of misdemeanors enumerated—assault and battery is one of the

class. It goes farther than the common law, and dispenses with the trial by jury, provided for by the 4th *Section.*

The legislature, under that section, has said, in the act of 1832, that the trial by the Mayor's Court may be without *indictment,* and conditionally with or without petit jury, as may be provided by the ordinances. The 15th *Sec.* of the 6th *Art.* of the *Amend. Const.,* is not a grant of power to the legislature, but an exception out of a previous limitation imposed on the legislative power. The whole of the first article is a restraint on that power, which otherwise *proprio vigore,* could have enacted other provisions.

The restraint being removed, leaves the legislative power absolute in relation to that class of cases, and as the sovereign power, might enact what it pleased—*Cujus est dare ejus est disponere.* But legislation is not less certain nor specific because it is conditional (id certum est quod certum reddi potest,) 7 *Cranch,* 386, *Cargo of brig Aurora* vs. *United States.* The ordinance passed 3d May 1832, dispensed with trial by jury in those cases, and plaintiff in tendering the issue put himself upon the court. If he had put himself upon the country by his issue, the court might then have exercised its discretion, whether to try by jury or without, and have ordered the pleadings to be amended. The seventeenth section of the act of 1832, constitutes the court and defines its jurisdiction. Under that section its prosecution must be by indictment and petit jury. But the nineteenth section gives it the power in a class of cases, to proceed without indictment, and in a certain event without petit jury. The one provision is positive the other conditional. The condition or event having arisen, the law becomes equally certain and positive. As to the exclusive jurisdiction given by the 17th *Sec.,* the jurisdiction of courts is either *in locum, in personam,* or *in subjectam materiam.* 1. It has reference to the district over which it is to be exercised. 2. To the subject matter of its authority.

The *local jurisdiction* of the Court of General Sessions is provided for in the 11th *Sec.* of 6th *Art.* The *subject matter* of *that* jurisdiction is provided for in the 4th *Sec.* The first cannot be changed, but the *second may* by the 12th *Sec.* of 6th *Art.* The legislature have the power by the constitution to create *inferior courts,* by a vote of two-thirds. That power has been exercised and a court created. The question as to the *appointment* of judges of the court, arises under another article of the constitution, and does not involve that of the power to create the court. It might be asked, shall the corporation under the charter appoint the judges; or shall the governor under the constitution appoint them? But the right of the judges cannot be

questioned under a writ of error; it must be by quo warranto. Non constat then that there is any error.

Upon a writ of error, the court takes notice of the law or custom of the inferior jurisdiction. *Reedham* vs. *Waters,* 1 *Salk.* 269.

Matter contrary to the record cannot be assigned for error. 1 *Salk.* 262, *Lampton* vs. *Collingwood ; Cro. Jas.* 11, *Arundel* vs. *Arundel; 2 Bulst.* 243; *Whistler* vs. *Lee, s. c ; Cro. Jac.* 359; *Cro. Jac.* 244, *Bowsse* vs. *Cannington.*

*Read, Jr.,* in reply :

Legislative power is a very different thing in England, and in this country. An act of parliament is omnipotent. Without successful resistance it must bind. In this country, every act of the legislature is subject to the revision of the courts, as tested by the constitution.

We differ again as to the power of the legislature, being only restrained by the constitution, and not the subject of grant. With regard to the constitution of the United States, the spirit of government is to give it a strict construction; but as to the state legislatures, the constitutions are to be construed liberally. Else why is the court now sitting on this subject.

1. Question, whether the act of 1832 is constitutional in certain particulars, and,

2. Whether that makes the act of a court, deriving its authority under that law, in the present case void.

These courts are unconstitutionally organized :

1st. Because the judges are not appointed by the governor. 2d. Because the legislature could not take away the trial by jury in the mode they have attempted it.

The case from *Dallas* has no applicability, because the question was simply one of the compatability of two offices under the state and the United States. The question could not have depended on the origin of the appointment of the recorder, for he is appointed by the governor.

The constitutional expression is, all offices not herein provided for. At the date of the constitution, the Mayor's office did not exist. We must overlook the very words of the constitution, to say that an act not professing in its terms to constitute an inferior tribunal, a supplement to a Wilmington charter, *creating* an office, a judicial officer, a judge of a new court, vests him with new and enlarged powers, and yet claims, in direct opposition to the constitution, to appoint this officer otherwise than by the governor. And it goes beyond this; not merely a mayor, but a civil side, called the " City Court," a court of extensive powers unknown to the constitution,

arising after it, created subsequently to it, with three judges, and not appointed by the governor.

2. The mode of exercising this authority, by the legislature, is illegal. A delegation of legislative power—a delegation in the worst possible form, to a corporation.

What has been attempted. To give to the people of Wilmington the right of choosing their judges by lot; the right of dispensing with trials by jury; the right to exclude the general jurisdiction of the courts established by the constitution.

What right had the legislature to delegate the power to any other body, to say whether a trial should be by jury. The constitution had authorised the legislature to provide certain inferior tribunals, and to *decide* whether the trial in such courts should be by jury: did they act on this authority? Not so. In granting an act of incorporation, they indirectly authorize a court, but are silent as to the mode of trial: they decide, or worse, leave it to a corporation to decide, whether the most valued institutions of our country—the trial by a petit jury, the accusation by a grand jury—shall all be set aside; devolving on the city council the whole authority to say whether the citizens of Wilmington shall be tried by jury or not. If it be competent for the legislature thus to do, it may invest any corporation in any place with the right of legislation. No authority could constitutionally divest the defendant's right to a trial by jury but the legislature itself. The 19th *section* is then plainly unconstitutional.

These courts are not inferior. I ask if this court has the right of visitation; to correct their errors, to fine and imprison their judges, &c., which constitutes, in the meaning of the term, a superior and inferior court.

The gentleman was driven to admit that this grant was conditional. This admits the whole subject, The grant of such a power is unconstitutional. Can't be possible that the convention meant to give the legislature the power to give to a corporation the conditional power of taking away jury trials and indictments or not, at their pleasure.

It has been attempted to assimilate this to the case in *Cranch.* But that was a case merely providing a rule of evidence to the public, of certain acts upon which congress had declared that a law should cease to exist.

*Curia adv. vult.*

The following opinion was drawn up, but not pronounced. A majority of the court were not prepared at this time, and did not think it necessary to express their opinions at large, on some of the points

raised in the argument. The court merely decided, that the Mayor's Court of the city of Wilmington has jurisdiction to try the offence of assault and battery. It was not even necessary to decide in this case, that the court could try such cases without the intervention of a jury, as it appeared from the record, that the plaintiff in error had submitted himself to that mode of trial.

It was understood to be the opinion of all the court :—

1st. That the legislature has the power to establish from time to time other courts than those mentioned in the 1st. *section* of the 6th *Art.* of the constitution.

2d. That the legislature has the power to take away any of the criminal jurisdiction conferred by act of assembly on the Court of General Sessions of the Peace. (*a.*)

3d. They inclined to the opinion that in the creation of other courts such as are contemplated by the first section of the sixth article, the legislature have the power to *transfer* this jurisdiction to such courts.

4th. That in the creation of *inferior* courts under the fifteenth section, the jurisdiction of such courts is necessarily confined to the offences therein mentioned.

5th. That the Mayor's Court of the city of Wilmington, being the court of a corporation, is necessarily an *inferior* court.

6th. That, therefore, the Mayor's Court has no jurisdiction of larcenies, riots, routs, unlawful assemblies, and the other offences mentioned in the seventeenth section of the charter, and not mentioned in the fifteenth section of the sixth article of the constitution.

On these points, the other judges were understood to concur generally, in the views presented by the following opinion of

HARRINGTON, *Justice :*

The errors assigned in this case present the question, whether " the Mayor's Court of the city of Wilmington," has jurisdiction under the constitution and laws of this state, to inquire of, try and determine, by information, and without a jury, the offence of assault and battery, committed within the city limits.

The origin of the Mayor's Court, under that name, and with the

(*a.*) The same point was ruled in the Court of General Sessions at this term, in *The State* vs. *John Lynch,* which was an indictment for retailing goods without license, in the city of Wilmington. The defendant pleaded to the jurisdiction of this court ; and the court decided that its jurisdiction was taken away by the seventeenth section of the city charter (8 *Del. Laws* 102.)

Whether this jurisdiction has been transferred to the Mayor's Court ; Quere?

powers claimed for it in this case, is admitted to be under an act of assembly entitled " a supplement to the act entitled an act to alter and re-establish the charter of the borough of Wilmington," passed at Dover, January 18, 1832, (8 vol. 97.)    For though it is contended that the franchise of holding a court existed in the corporation of the borough of Wilmington, under its charter of 1772, and before the constitution either of 1831, 1792 or 1776, it is admitted that this franchise was but the power to appoint certain officers called burgesses, whose judicial functions extended only to the discharge of those duties within the borough, " which justices of the peace for the county of New Castle could lawfully do."    Admitting that this franchise existed before, and has not been in any manner affected by, the constitutions since adopted, it certainly does not vest the power now claimed by the corporation of the city of Wilmington, and cannot, in itself, be relied on as authorizing a court composed of very different officers, to wit : a " mayor, alderman, and president of the city · council," and exercising more general jurisdiction than that which belongs to justices of the peace for the county of New Castle. Resorting, therefore, to the act of 1832, as the origin of this court, as at present organized, and with the jurisdiction and powers now claimed for it, I shall inquire—

1st. Whether it was competent to the legislature to found this court upon, and by way of extension or enlargement of, an ancient franchise existing in the corporation; and,

2d. Whether, under the constitution, it was competent to the legislature to *create* a court with the jurisdiction and powers of the Mayor's Court for the city of Wilmington, and with authority to exercise those powers within its jurisdiction in the manner and form adopted in the present case.

It is conceded that the subject of the grant, in this case, is judicial power. ·  Whether granted as a franchise, or otherwise, the Mayor's Court for the city of Wilmington is *a court;* its officers, whether officers of the state or of the corporation, are *judicial* officers, and the exercise of their proper functions is an exercise of *judicial power.*

The 6th article of the amended constitution of the state, vests the *judicial power of this state* in a Court of Errors and Appeals, a Superior Court, a Court of Chancery, an Orphans' Court, a Court of Oyer and Terminer, a Court of General Sessions of the Peace and Gaol Delivery, a Register's Court, justices of the peace, and *such other courts as the general assembly, with the concurrence of two-thirds of all the members of both houses, shall from time to time establish.*

By the 11th section, the jurisdiction of the Court of General Sessions of the Peace is (with the other courts,) made " co-extensive

with the state;" but by the 12th section, power is given to the legislature to repeal or alter any act of the general assembly giving jurisdiction to that court, in any matter.  The _subject matter_ of the jurisdiction of the Court of General Sessions of the Peace, not being the subject of constitutional provision except by reference to " the jurisdiction and powers heretofore vested by the laws of this state in the Court of General _Quarter_ Sessions of the Peace," is entirely derived from acts of the general assembly; it follows, therefore, that the legislature have the power to take away from this court, not only its jurisdiction over assaults and batteries, but to deprive it of any or all the subjects now embraced within its jurisdiction.

If the constitution had rested here, with the declared right in the general assembly (two-thirds of the members of both houses concurring) to " establish other courts," and the express power to take away from the Court of General Sessions of the Peace, the jurisdiction of any offences cognizable before it, the argument would have been very strong that claimed for the legislature the power to _transfer_ to such other courts as might be established, any or all of the jurisdiction that might be so taken away from this court.

But although this argument is confirmed by the 15th section, in relation to assaults and batteries, and the class of cases there enumerated, an implied _restriction_ is imposed on the grant of jurisdiction to any other courts which may be established by the legislative power; a restriction which, if it do not embrace the case of the plaintiff in error, is necessary to be kept in view, as it is directly violated in the 17th and 18th sections of the city charter, which sections, with the 19th, organize the Mayor's Court, and give it all its powers.

The restriction to which I refer is _necessarily implied_ from the grant of power contained in section 15.  " The general assembly may by law give to any inferior courts, by them to be established, or to one or more justices of the peace, jurisdiction of the criminal matters following, that is to say : assaults and batteries, keeping without license a public house of entertainment," &c. &c. &c., specifying by name the offences, and all the offences, which could be made cognizable before such inferior courts, as two-thirds of the general assembly might from time to time establish.

My construction of the constitution, therefore, is, in reference to the power of the legislature to create other courts, to invest them with criminal jurisdiction now belonging to the Court of General Sessions of the Peace, either concurrent with that court or exclusive; and to take from that court any portion or all of its criminal jurisdiction :

1st. That the legislature may establish other courts, and give them criminal jurisdiction, either concurrent with our present criminal courts or in exclusion of their jurisdiction.

2d. That in the establishment of *inferior* courts, under the 15th section of the 6th article of the amended constitution, their jurisdiction must be limited to the offences enumerated in the said section: and,

3d. That though the legislature may repeal any law giving criminal jurisdiction to the Court of General Sessions of the Peace, and thus in effect abolish the cognizance of the offences comprized in such law, they cannot transfer the jurisdiction of such offences to any inferior courts to be established by them, except as before stated in regard to the class of cases mentioned in the 15th section.

The 17th section of the Wilmington charter establishes a Mayor's Court, and gives it jurisdiction over " all *larcenies,* assaults and batteries, *riots, routs,* and *unlawful assemblies,* nuisances, and *other offences*" committed within the city, " and to punish all persons who shall be convicted of the same offences, or any of them, agreeably to the laws of this state;" and to try and determine all offences committed within the said city against any of the laws, ordinances, regulations or constitutions of the said city; to impose fines on jurymen, take recognizances of bail and the peace, &c., &c.; and expressly excludes the jurisdiction of the Court of General Sessions of the Peace over any of the matters thus made cognizable in the Mayor's Court.

The 18th section gives to the Mayor's Court the powers of a *superior* court in the very words in which that power is conferred on the late Supreme Court and the present Superior Court; to examine, correct, and punish the contempts, omissions, neglects, favors, corruptions and defaults of justices of the peace, sheriffs, coroners, clerks or *other officers,* without restriction or limitation.

Neither larcenies, riots, routs, nor unlawful assemblies, are included within the class of offences, which, by the 15th section of the 6th article of the amended constitution, the legislature are authorised to assign to inferior courts by them to be established; and if the term " other offences," mentioned in the act, is not to be restrained to offences inferior in grade to those already enumerated, there is no limit to the jurisdiction of the Mayor's Court over offences committed within the city. Nor can it be believed that the convention intended to give to the legislature the power to devolve on an " inferior court "—upon even the agents of a corporation, as it is contended these officers of the Mayor's court are—the highest powers of a superior court, to wit: of visitation and correction of errors;

the power to examine, correct· and *punish* the contempts, omissions, neglects, favors, corruptions and defaults of other courts and officers—courts and officers created by and deriving their existence from the constitution itself. Yet such powers are conferred on the Mayor's Court by the 18th section of the city charter.

I think I risk nothing in saying that this grant of power is unconstitutional and *void*. It is not embraced within the letter of the constitution; it is not contemplated by its spirit or intent; it is not necessary or useful in reference to the objects for which the door was left open for the establishment of other and inferior courts; it is plainly inconsistent with the idea of an inferior court to place in the hands of a tribunal claiming to be merely a corporation franchise, exercising its functions through corporation agents, not selected by nor responsible to the public at large; powers and jurisdiction equal to and exclusive of the highest judicial tribunals of the state, and superior to courts and officers deriving authority immediately from the constitution itself.

But while I conclude that it was not within the constitutional competency of the general assembly, to give to the Mayor's Court jurisdiction of many of the offences mentioned in the 17th section of the city charter, nor to confer upon it the powers mentioned in the 18th, I am equally clear that the legislature were authorized to give to that court the power and authority contained in the 19th section, (and which embraces the present case,) provided that neither the organization of the court nor the discretion given to the city council, to dispense with trial by jury, shall have vitiated the grant. And this brings me to inquire.

1st. Whether the legislature could bestow upon a corporation the franchise of holding a Mayor's Court, either originally or by way of enlargement or extension of an ancient franchise of a similar character, and including by consequence, the right to appoint the officers of such court.

2d. Whether they could vest in the Mayor's Court the power to try the offences enumerated in the 15th section of the 6th article of the amended constitution, " with or without trial by petit jury, as should be provided by the ordinances of the city."

A public corporation may, at common law, enjoy the franchise of holding a court. Thus, 1 *Inst.* 114, 4 *Inst.* 87, 224, " a mayor or bailiff of a town may have liberty to keep courts, and hold pleas in a certain place, according to the course of the common law : and power to draw causes out of the king's courts by an exclusive jurisdiction." *Jac. Law Dic.*, tit. *Franchise.* And such a franchise existed in this corporation before the constitution. I speak of the

character of the franchise, not of its extent or degree. The corporation of Wilmington enjoyed by patent, dated in 1739, the right to elect two burgesses and six assistants, with a high constable and town clerk, which burgesses by the same patent, and also by the act of 1772, were invested with all the judicial powers, within the corporation limits, of justices of the peace within the county. The franchise, therefore, of holding courts co-extensive with the powers and jurisdiction of justices' courts, by officers of their own appointment, existed in this corporation before the constitution; has been confirmed by subsequent laws, and is expressly saved by the 8th section of the 7th article of the amended constitution. " The rights, privileges, immunities, and estates of religious societies, and corporate bodies, shall remain as if the constitution of this state had not been altered."

If such a franchise existed in this corporation before the amended constitution, and indeed under it, because recognized and confirmed by that instrument, could the legislature enlarge the franchise and extend its jurisdiction by increasing the powers of the corporate officers ? If it could, the objection to the mode of appointing these officers will no longer hold ; nor will that constitutional provision be violated which provides that the governor shall appoint all officers whose offices are established by the constitution, or shall be established by law, and whose appointments are not therein otherwise provided for. For these are not officers, either of the state or county, but of the corporation; and, though it should be· conceded that the court, as a Mayor's Court, under its enlarged jurisdiction and new name, is established by the act of 1832, it is only by the increase of powers of officers existing before the constitution, and whose appointments are therein otherwise provided for, to wit : by the saving of the right to the corporation of Wilmington to elect its own officers.

I can see nothing in the constitution to prevent the legislature, which, according to the 15th section, " may by law give to any inferior courts by them to be established, or *to one or more justices of the peace,* jurisdiction of the criminal matters " therein enumerated, from giving this jurisdiction to officers of the corporation of Wilmington, which, from time immemorial were, as to all matters arising wtthin the corporation limits, justices of the peace. The argument would be strong if confined to the 15th section, and founded on the right of the legislature to enlarge the powers of these corporate officers *as justices of the peace.* It would certainly be within the spirit, if not within the letter of that section ; but it is, in my view, strengthened and established by reference to the 1st section,

which authorizes the vesting of judicial power " in such other courts as the general assembly, with the concurrrence of two-thirds of all the members of both houses, shall from time to time establish." If the legislature could originally vest judicial power as a franchise in this corporation, they have the right to enlarge and increase it to any extent not prohibited by the constitution; and they were authorized to select this corporation court, and bestow upon it all the jurisdiction that they could confer on any other *inferior* court of their creation. Having selected it, and established it as a court, with enlarged powers, the appointment of its officers remains as heretofore in the corporation, and cannot be taken from it without violating its ancient franchise.

This point might, perhaps, have been avoided, by adopting the position taken in behalf of the defendant in error, that it is not competent for the court, on this writ of error, or otherwise than by *quo warranto*, to inquire into the mode of appointing the judges of the Mayor's Court; but the question must soon arise in such a shape that it may not be avoided, as there are several other cases remaining on the docket, in which the proceedings of that court are to be tested by the constitution. I have thought proper, therefore, at this time to meet the question; and I think it of great consequence that the public should know, at once, what is the opinion of this court on these constitutional questions.

I hold, that the Mayor's Court for the city of Wilmington, is a court legally organized in conformity with the constitution, having jurisdiction within the city limits, over the criminal offences enumerated in the 15th section of the 6th article of the amended constitution; and also of the offences against city regulations, enumerated in the 17th section of the city charter; but that it has not the jurisdiction claimed for it in the said 17th section, over all larcenies, riots, routs and unlawful assemblies and " other offences" against the laws of this state; nor has it the full power and authority of *this* court, to examine, correct and punish the contempts, omissions, neglects, favors, corruptions and defaults, of all or any of the justices of the peace, sheriffs, coroners, clerks or other officers; though the 18th section of the charter does assume to give it these powers.

There remains one question for consideration, and that is, whether the Mayor's Court, in the exercise of that jurisdiction which does belong to it, may proceed, in virtue of an ordinance of the city council, upon information, and without trial by a petit jury.

It is admitted, that an ordinance of the city council, directed the proceedings in the Mayor's Court in these cases to be " upon information filed by the prosecuting officer for said court, and without

trial by petit jury;" and that this ordinance was passed in pursuance of the 19th section of the city charter, which authorizes the Mayor's Court to try all those criminal matters enumerated in the 15th section of the 6th article of the amended constitution "without indictment by grand jury, and *with or without* trial by petit jury, as shall be provided by the ordinances of the said city :"—but it is contended that the legislature had no right thus to authorize the *city councils* to take away the trial by jury; in short, that the law conferring that power is unconstitutional.

By the 15th section of the 6th article of the amended constitution, it is provided, in reference to these inferior courts, that "the general assembly may by law, regulate this jurisdiction and provide that the proceedings shall be with or without indictment by grand jury, or trial by petit jury; and may grant or deny the privilege of appeal to the Court of General Sessions of the Peace.

It is conceded that this provision gives to the legislature the power to take away the trial by jury, in cases before the Mayor's Court; but it is said that the act of 1832, is not a valid execution of this power, inasmuch as the legislature have not by that act, directed the trial to be without jury, but left it to the city councils to determine whether such trials shall or shall not be by jury.

I confess myself unable to appreciate the argument which denies to the legislature the right to pass a *conditional law*, in a matter over which they have the absolute power of legislation. So long as the mathematical axiom, that the greater includes the less, remains to be true, it does appear to me that the power to say definitively, that all trials in the Mayor's Court shall be without jury, includes the power to say that such trials shall be without jury, *if* the people of the city, through their proper organs, the city councils, shall so will it. Is this a delegation of legislative discretion? Not at all. The legislature act on the subject. They declare that the proceedings shall be without trial by jury, only in one event; and on the passing of an ordinance, the will of the legislature is as fully expressed against a trial by jury in these cases, as if they had directed the trial to be without jury at the first, and without waiting for the ordinance. The condition is in favor of the trial by jury. It leaves the corporation at liberty to apply that mode of trial to such cases as they may consider it expedient to extend it to; in all other cases, the legislature provide and authorize the proceedings to be without jury. Nor is this mode of legislation uncommon. Numberless instances might be collected from our statute book. I refer to but one, which is so directly in point, and affords in itself so many instances of the application of this discretionary or conditional legislation, that its force as a precedent can-

not but be felt. The supplement to the act for the establishment of free schools, authorizes a *tax* to be levied and raised in each school district; but the 5th section provides that no such tax shall be levied in any school district " without the express will and consent of a majority of the school voters in such district, such majority to be ascertained by ballot." Here is an instance of conditional legislation, on that important subject of taxation; and we know that in practice the result has been, to make this law operative as a taxing law in some districts and inoperative in others, and variable at different periods in the same district. It proceeds on the principle, that the legislature having the power of taxing *absolutely*, may exercise that power *conditionally*, and make their legislation depend on the will of those immediately affected by it; providing at the same time a certain rule of evidence of that will. So in the case before us, the legislature having the power to dispense with trial by jury in certain cases absolutely, have done so conditionally, provided that the people of Wilmington, who are to be affected by it, shall choose that mode of proceeding, and the evidence of their choice is the ordinance of their city council.

This view is strengthened by the case cited from 7 *Cranch*, 382, *Cargo of brig Aurora* vs. *The United States*. The Supreme Court did certainly decide in that case, " that the legislature may make the revival of an act, and of a highly penal act too, depend on a future event; and direct that event to be made known by proclamation." For though the counsel in support of the law, in answer to the argument on the other side, that this was a transfer of legislative power to the president, did suggest that the law merely prescribed a rule of evidence of a fact, the court took refuge under no such idea, but said " we can see no sufficient reason why the legislature should not exercise its discretion in reviving the act of March 1st 1809, either expressly or *conditionally*, as their judgment should direct." The Supreme Court, therefore, has decided that a conditional law, dependant for its existence on the act of another person or body than the legislature itself, is a constitutional law. And that is the case before us.

On the whole, I see no error in this record, and I am of opinion that the judgment of the Mayor's Court ought to be affirmed, with costs.

*Read, jr.*, for plaintiff.
*R. H. Bayard*, for defendant in error.