11 U.S. 382
 7 Cranch 382
 3 L.Ed. 378
 THE CARGO OF THE BRIG AURORA, BURN SIDE, CLAIMANT,
v.
THE UNITED STATES.
 February 23, 1813
 
 Present. All the Judges except TODD, J.
 
 
 1
 THIS was an appeal from the sentence of the district Court for the district of Orleans, condemning the cargo of the brig Aurora, for having been imported from Great Britain, in violation of the 4th and 5th sections of the non-intercourse act of March 1st, 1809, vol. 9, p. 243, which it was contended were in force against Great Britain, on the 20th of February, 1811, (when this cargo was seized,) by virtue of the act of May 1st, 1810, vol. 10, p. 186, and the President's proclamation of November 2d, 1810.
 
 
 2
 By the 4th section of the act of March 1st, 1809, it is enacted, 'that from and after the 20th day of May next, it shall not be lawful to import into the United States or the territories thereof, any goods, wares or merchandize whatever, from any port or place situated in Great Britain or Ireland, or in any of the colonies or dependencies of Great Britain, nor from any port or place situated in France, or in any of her colonies or dependencies, nor from any port or place in the actual possession of either Great Britain or France.'
 
 
 3
 By the 5th section of the same act it is enacted, 'that whenever any article or articles, the importation of which is prohibited by this act, shall, after the 20th of May, be imported into the United States or the territories thereof, contrary to the true intent and meaning of this act,' 'all such articles' 'shall be forfeited.'
 
 
 4
 By the 11th section of the same act, it is provided, 'that the President of the United States be, and he hereby is authorized, in case either France or Great Britain shall so revoke or modify her edicts, as that they shall cease to violate the neutral commerce of the United States, to declare the same by proclamation; after which the trade suspended by this act and by the act laying an embargo' &c. 'may be renewed with the nation so doing.'
 
 
 5
 This act was to continue in force only to the end of the then next session of Congress, but the 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 17th and 18th sections were, by the act of June 28th, 1809, continued to the end of the next session.
 
 
 6
 On the 19th of April, 1809, in consequenee of the arrangement with Mr. Erskine, the President issued his proclamation declaring that Great Britain had so revoked her edicts, &c. whereby the law ceased to operate against her. But in consequence of the disavowal of Mr. Erskine's arrangement by the British government, that proclamation was afterwards revoked.
 
 
 7
 The act of 1st of March, 1809, expired with the session of Congress, on the 1st of May, 1810, on which day, Congress passed an act, (vol. 10, p. 186,) the 4th section of which enacted, 'that in case either Great 'Britain or France shall, before the third day of March next, so revoke or modify her edicts, as that they shall cease to violate the neutral commerce of the United States, which fact the President of the United States shall declare by proclamation, and if the other nation shall not within three months thereafter so revoke or modify her edicts in like manner, then the third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eighteenth sections of the act, entitled 'An act to interdict the commercial intercourse between the United States and Great Britain and France, and their dependencies, and for other purposes,' shall, from and after the expiration of three months from the date of the proclamation aforesaid be revived, and have full force and effect, so far as relates to the dominions, colonies, and dependencies of the nation thus refusing or neglecting to revoke or modify her edicts in manner aforesaid. And the restrictions imposed by this act, shall, from the date of such proclamation cease and be discontinued in relation to the nation revoking or modifying her decrees in manner aforesaid.'
 
 
 8
 On the 2d of November, 1810, the President issued his proclamation, declaring that France had so revoked or modified her edicts, as that they ceased to violate the neutral commerce of the United States.
 
 
 9
 By the act of March 2d, 1811, vol. 10, p. 346, sec. 1, it is enacted, 'that no vessel owned wholly by a citizen or citizens of the United States, which shall have departed from a British port prior to the 2d day of February, 1811, and no merchandize owned wholly by a citizen or citizens of the United States, imported in such vessel, shall be liable to seizure or forfeiture, on account of any infraction, or presumed infraction of the provisions of the act to which this is a supplement,' (the act of May 1st, 1810.)
 
 
 10
 The 2d section provides that in case Great Britain should so revoke or modify her edicts, &c. the President shall declare the same by proclamation.
 
 
 11
 The 3d section enacts, that until the proclamation aforesaid 'shall have been issued, the several provisions of the 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th and 18th sections of the act, entitled 'An act to interdict,' &c. (the act of March 1st, 1809,) 'shall have full force, and be immediately carried into effect against Great Britain, her colonies and dependencies.'
 
 
 12
 The Aurora cleared out from Liverpool on the 11th of December, 1810, sailed on the 16th, and arrived at New Orleans, between the 2d and the 20th of February, 1811. The President's proclamation of 2d of Nov. 1810, was known in Liverpool on the 13th of December.
 
 
 13
 JOSEPH R. INGERSOLL, for Appellant.
 
 
 14
 Here was no intent to violate the law. The vessel cleared out before the proclamation was known in Liverpool, and a knowledge of that fact is not brought home to her. But if it had been, it was impossible for her to know whether Great Britain would not, before the 2d of February, revoke her obnoxious orders in council, so that the law would never come into operation, even if the President could, by proclamation, call it into existence. And the law, if it should take effect, was not to go into operation until 'the 20th of May next.' When was the 20th of May next? If the law was revived by the proclamation, it could not be revived until the 2d of February, 1811. It was to be considered as being re-enacted on that day. The 20th of May next, therefore meant to the 20th of May, 1811. The words of the act of May 1st, 1810, are, 'shall from and after the expiration of three months from the date of the proclamation aforesaid, be revived, and have full force and effect.' The provision that it should begin to operate on the 20th of May next, was as much a part of the law as any other of its provisions. It was the intention of the legislature, that some warning should be given to the citizens of the United States, so that they might by possibility avoid forfeiture under it. But if that provision be not adopted as well as the others, it was impossible to avoid the penalties of the law; for until the 2d of February, it would at all events be lawful to import, and until after that day it would be impossible to know that Great Britain had not revoked her edicts, so that if the law was to take effect on that day, it would be impossible for the most innocent and most wary to escape punishment.
 
 
 15
 This could not have been the intention of the legislature. Effect ought, if possible, to be given to the words, after the 20th of May next; and the most matured construction is that the legislature meant the 20th of May next following the day, when the act should become absolute, by the happening of the contingency on which its existence was to depend. A contrary construction would attribute to the legislature the most flagrant injustice; that of punishing a man under a law of which it was impossible he should have had a knowledge.
 
 
 16
 Whoever heard of a conditional penal law, the condition of which was to be decided by the party, and which it was impossible for him to decide until after the law became absolute? The President was not authorized to decide it. Every man was to ascertain the fact for himself.
 
 
 17
 But Congress could not transfer the legislative power to the President. To make the revival of a law depend upon the President's proclamation, is to give to that proclamation the force of a law. Congress meant to reserve to themselves the power of ascertaining when the condition should have been performed. This is to be inferred from the act of March 2d, 1811, by which it is enacted, that until Great Britain shall so revoke her edicts, &c. and until that fact shall be proclaimed by the President, the enumerated sections of the act of March 1st, 1809, interdicting, &c. 'shall have full force, and be (i. e. shall be) immediately carried into effect.' These expressions strongly imply that those sections of the act were not already in full force, and had not been carried into effect.
 
 
 18
 But the 1st section of the act of March 2d, 1811, protects from forfeiture all American vessels and goods, which sailed from Great Britain before the 2d of February. The information in this case does not deny that the goods are bona fide American property; and the answer of Burnside calls the Aurora an American Brig speaks of the return voyage, and states himself to be of New Orleans. The bill of lading is also on account and risk of an American citizen. It is therefore to be inferred, that the property was American, and therefore not liable to forfeiture.
 
 
 19
 JOHN LAW, contra.
 
 
 20
 The proclamation was known in Liverpool three days before the Aurora sailed, and must be presumed to have been known by the master.
 
 
 21
 The 20th of May referred to in the act, was the 20th of May, 1809, which had passed when the law of May 1st, 1810, was enacted, and when the act of March 1st, 1809, expired.
 
 
 22
 The legislature meant to revive the law as it existed on the day of its expiration. The words after the 20th of May next, were at that time of no effect, and were as inoperative as if they had been expunged from the law.
 
 
 23
 The legislature did not transfer any power of legislation to the President. They only prescribed the evidence which should be admitted of a fact, upon which the law should go into effect.
 
 
 24
 The evidence is not sufficient to show the cargo to be American property.
 
 Feb. 26th
 
 25
 JOHNSON, J. delivered the opinion of the Court as follows:
 
 
 26
 This is an appeal from a decision of the district Court of Orleans, on a libel preferred against the goods in question, under the non-intercourse acts of March 1st, 1809, and May 1st, 1810.
 
 
 27
 These goods were claimed by Robert Burnside, a citizen of Orleans, as his property, and the material questions in the cause are,
 
 
 28
 1st. Is the property American, in which case it is exempted from forfeiture, by a subsequent law, viz. of March 2d, 1811.
 
 
 29
 2d. Was the act of 1st March, 1809, revived by the President's proclamation at all, and if revived, did it commence its operation on the 2d February, or on the 20th May following, the time of issuing that proclamation.
 
 
 30
 On the question of fact, the Court are of opinion, that the evidence is not sufficient to prove the property American. The national character of the property the Claimant might easily have established by his correspondence, and the examination of witnesses in Europe. No such evidence is resorted to. The bill of lading alone is resorted to, on which it is said to be shipped on account of a citizen of the United States, and consigned to Burnside, but the name of the owner is not inserted. Here again the defect of evidence may have been supplied by evidence who this citizen was, but no such evidence is adduced.
 
 
 31
 In the examination of the two clerks of John Rason & Co. of Liverpool, it is simply stated, that these goods were shipped by John Richardson, of Liverpool, but on whose account they do not state, nor does it appear that they were examined to that point.
 
 
 32
 Upon the whole, we are of opinion, that the absence of proof which might so easily have been supplied, will authorize a conclusion, that the property was not American.
 
 
 33
 On the second point, we can see no sufficient reason, why the legislature should not exercise its discretion in reviving the act of March 1st, 1809, either expressly or conditionally, as their judgment should direct. The 19th section of that act declaring that it should continue in force to a certain time, and no longer, could not restrict their power of extending its operation, without limitation upon the occurrence of any subsequent combination of events.
 
 
 34
 On the question when the operation of the 4th section of the act should commence, we are of opinion that by reviving an act, the legislature must be understood to give it, from the time of its revival, precisely that force and effect which it had at the moment when it expired. And that a suspended operation to the 20th May, would be wholly inconsistent with the words made use of in the 4th section of the act of May, 1810, viz. 'shall be revived and have full force and operation,' and therefore, that its operation commenced on the 2d Feb. 1811.
 
 
 35
 Some objections have been made to the sufficiency of the libel, because it does not negative the fact of American property. But on that subject, we are of opinion, that in no case can it be necessary to state in a libel, any fact which constitutes the defence of the Claimant, or a ground of exception of the operation of the law on which the libel is founded.