MICHIGAN BAPTIST HOMES & DEVELOPMENT COMPANY v
CITY OF ANN ARBOR

1. TAXATION—PROPERTY TAX—EXEMPTION—HOMES FOR THE AGED—
STATUTES.

A nonprofit corporation which owns and operates a home for the
aged will not receive an exemption from property taxation
unless the housing facility or project is qualified, built or
financed under § 202 of the National Housing Act of 1959, as
amended, and unless the home may properly be categorized as
a charitable or benevolent institution (MCLA 211.7d, 211.9; 12
USC 1701q).

2. TAXATION—PROPERTY TAX—EXEMPTION—HOMES FOR THE AGED.

A home for the housing and care of the aged, where the appli-
cants for residence must be at least 65 years old and physically
able to maintain themselves in a room without the aid of
nursing personnel, and where each resident must pay two
charges, a life-lease fee and a monthly service charge, and the
ability to pay both charges is a factor which is considered in
determining whether an applicant will be admitted, does not
qualify as a housing facility or project built or financed under
the housing act, and is not a charitable or benevolent institu-
tion where it appears to be more of a cooperative housing
facility for elderly people in good financial and physical health
than a charitable institution (MCLA 211.7d, 211.9; 12 USC
1701q).

3. TAXATION—PROPERTY TAX—EXEMPTION—HOMES FOR THE AGED—
EQUAL PROTECTION—CLASSIFICATION.

There was no denial of equal protection to a plaintiff home for
the aged because it was not granted exemption from taxation
while the property of another home for elderly women was
granted an exemption, where the differences between the two
homes were of sufficient magnitude so as to preclude any

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 71 Am Jur 2d, State and Local Taxation §§ 387, 388.
Homes for the aged as exempt from property taxation. 37 ALR3d
565.
[3, 4] 71 Am Jur 2d, State and Local Taxation § 175 *et seq.*

argument that they were of the same class; the equal protection claim is meritorious only when something in the nature of a benefit is simultaneously granted and denied to different members of the same class.

4. Taxation—Property Tax—Exemption—Homes for the Aged—Equal Protection—Due Process.

The Legislature by limiting the exemption provided by a section of the General Property Tax Act to nonprofit corporations which have obtained financing under a section of the National Housing Act of 1959, as amended, has not denied anyone the equal protection of the laws and due process of law; it intended that the tax exempt status be extended to the lowest income type of housing and has merely created a special category of low income housing for the elderly which is to be granted tax exempt status (MCLA 211.7d; 12 USC 1701q).

Appeal from State Tax Commission. Submitted Division 2 May 14, 1974, at Lansing. (Docket No. 17211.) Decided October 7, 1974. Leave to appeal applied for.

Michigan Baptist Homes & Development Company sought a property tax exemption for a home in the City of Ann Arbor used for the housing and care of the aged. The State Tax Commission affirmed the decisions of the Ann Arbor City Assessor and Board of Review denying the exemption. Plaintiff appeals on leave granted. Affirmed.

*Foster, Lindemer, Swift & Collins, P. C.,* for plaintiff.

*R. Bruce Laidlaw,* Chief Assistant City Attorney, for the City of Ann Arbor.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for the State Tax Commission.

*Amicus Curiae: DeVine & DeVine* (by *Allyn D.*

*Kantor),* for Public Schools of the City of Ann Arbor.

Before: DANHOF, P. J., and T. M. BURNS and CARLAND,* JJ.

T. M. BURNS, J. Plaintiff is a Michigan nonprofit corporation organized and operated exclusively for the purpose of acquiring or erecting and maintaining nursing and convalescent homes, and homes for the aged or other institutions for the care of the mentally and physically handicapped, the sick, the disabled, aged or destitute.

Plaintiff has established and is presently operating four homes for the housing and care of the aged, these homes being located in Detroit, Grand Rapids, St. Joseph, and Ann Arbor. The Grand Rapids and Detroit assessors have granted exemptions for the property used in operating the homes in their respective cities. Plaintiff contends that its home in Ann Arbor, Hillside Terrace, is also entitled to an exemption from taxation pursuant to §§ 7 and 9 of the General Property Tax Act[1] for the real and personal property owned and used by plaintiff in operating the home in Ann Arbor.

The Ann Arbor City Assessor denied a property tax exemption for Hillside Terrace pursuant to the aforementioned sections of the General Property Tax Act for the tax years 1971 and 1972. The exemption was denied on the ground that the home was not operated for "charitable" purposes. The Ann Arbor Board of Review affirmed the assessor's action.

On April 27, 1973, the State Tax Commission affirmed the decisions of the Ann Arbor City As-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 211.7; MSA 7.7 and MCLA 211.9; MSA 7.9.

sessor and Board of Review. Plaintiff now appeals that decision by leave granted by this Court on October 15, 1973.

The purposes for which plaintiff was formed are described in Article I of its articles of incorporation as follows:

"To acquire or erect, and to equip, conduct and maintain on the broadest christian principles of service to humanity, nursing and convalescent homes, and homes for the aged, or other institutions for the care of mentally and physically handicapped, the sick, disabled, aged or destitute persons.

"The purpose of the organization of this corporation is for the general welfare and not for profit and any income derived therefrom shall not be paid out in dividends to any person or corporation but shall be used for benevolent charitable and general welfare purposes, and only for the purposes of such institution organized hereunder. Any receipts of this organization in excess of the expenses of purchase or erection and maintenance of said institution or institutions provided for herein shall be applied to the care of charity patients and to the equipment and enlargement of said institutions."

In order to fulfill the objectives set forth in its articles of incorporation, plaintiff, as mentioned previously, has established and is currently operating four homes for the housing and care of the aged in various parts of the State of Michigan.

Plaintiff claims that since the Grand Rapids and Detroit homes have already received exemptions for the property they use in operating their facilities, Hillside Terrace in Ann Arbor is also entitled to an exemption since it is operated in the same manner as the other two homes.

However, it is important to note that the actual organization and operation of Hillside Terrace in Ann Arbor is significantly different from the "be-

nevolent, charitable and general welfare purposes" described in Article I of its articles of incorporation.

The Hillside Terrace facilities were constructed between June, 1968 and October, 1969, at a total cost of almost $3,000,000. The facility is licensed by the State Department of Health as a home for the aged and a nursing home.

Applicants for residence must be at least 65 years old. Although admission is without regard to race or religious affiliation, an applicant must be physically able to maintain himself in his room without the aid of nursing personnel. Each applicant is required to submit to a physical examination to determine if he is ambulatory in that sense.

Residents of Hillside Terrace have either a one- or two-bedroom apartment with a private bath, heating and air conditioning, safety features and wall-to-wall carpeting. The types of apartments are differentiated according to size.

Each resident at Hillside Terrace must pay two types of charges, a life-lease fee and a monthly service charge. Both of these charges are based upon the number of square feet in the room or rooms taken. The payment of the life-lease fee, which can range anywhere from $8,000 to $20,000, entitles the resident to use of the room accommodations for his or her life. The monthly service charge, which ranged from between $245 and $490, covers daily meals and weekly maid and linen services. The average life-lease fee paid per resident by the 72 residents as of December 31, 1970, was just under $11,000. The average monthly service charge was approximately $283.

Prior to admission, applicants for residence at Hillside Terrace must submit an application form

that requires disclosure of their assets and income. The ability to pay both the life-lease fee and the monthly service charge is a factor which is considered in determining whether an applicant will be admitted. Plaintiff claims, however, that no resident will be asked to leave if he or she exhausts his or her financial resources and is unable to pay the monthly fee. It is important to note in this regard that, based on the information available to plaintiff from its application forms, the average net worth of Hillside Terrace residents as of December 31, 1971, was $74,274.19, and the average yearly income of the residents as of that date was $6,811.08.

There is no dispute between the parties as to plaintiff's status as a nonprofit corporation. Plaintiff's nonprofit status is borne out by operating losses of $148,460.39 for the year ending September 30, 1970, and $191,332 for the year ending September 30, 1971.

It is against this background of factual information that we must evaluate and resolve the issues presented on this appeal.

1. *Is the real and personal property owned by a nonprofit corporation exempt from real and personal property taxation pursuant to sections 7 and 9 of the General Property Tax Act, 1893 PA 206, as amended, when the property is used exclusively for operating a nonprofit home for the aged which is self-supporting and self-liquidating on the basis of payments by the residents?*

In evaluating the merits of this appeal, and for the sake of simplicity, we feel that this issue should be formulated to read as follows:

"Is a nonprofit corporation operating a residence facility for older people entitled to a property tax exemption when it charges entrance fees from $8,000 to

$20,000 and a monthly rental charge of from $245 to $490, when it appears that nearly all of the expenses involved in operating the facility are met from these fees?"

A thorough research of Michigan case law indicates that there is no Michigan case directly in point which deals with this particular issue. However, there is a considerable amount of authority from other jurisdictions that have dealt with this question. The relevant cases and statutory provisions have been collected in an annotation entitled, *Homes for the Aged as Exempt from Property Taxation,* in 37 ALR3d, pp 565–604.[2] A summary and statement of general principles is set forth at page 570 of the annotation as follows:

"[a] Generally

"Exemptions from taxation extended in favor of homes for the aged are the result of constitutional provision or statutory enactment.

"The question whether a particular home for the aged is exempt from taxation has been decided on a case-by-case basis, with inquiries being made into the specific phraseology of the constitutional or statutory tax exemption provision applicable, the character and purpose of the home, and the facts surrounding its use.

\* \* \*

"In their determinations of the exemption issues, the courts have often been influenced by certain persuasive factors, although no single factor has been found to be universally decisive. \* \* \* For example, cases were found to turn upon the imposition of substantial fees or stringent health requirements upon applicants for admission to the institutions under review, or upon the type of accommodations and services provided the residents thereof. Other cases have turned upon the factor, among others, that the institution restricted admission

---

[2] *See also* 71 Am Jur 2d, State and Local Taxation, §§ 387–388, pp 697–700.

to members of a particular class, or that the property for which exemption was sought was leased out rather than used in the operation of the institution as such, or, in some of the cases wherein the home was operated by an incorporated organization, upon provisions enumerating the corporate powers as found in the corporate charters."

The annotation continues with a discussion of the particular factors affecting exemptions: (1) imposition of fees, (2) imposition of health requirements, (3) quality of accommodations and services, (4) restrictions limiting admission to a particular class, (5) property leased to third parties, and (6) purposes of institution as designated in its charter. The annotation also emphasizes, however, that analysis of a particular case depends upon the fact situation presented and the provisions of the applicable constitution or statute.

Michigan has no statutory provision which unqualifiedly exempts a home for the aged from property taxation. However, two provisions of the General Property Tax Law are pertinent. MCLA 211.7d; MSA 7.7(4a) provides that:

"(1) Housing owned and operated by a nonprofit corporation or association or by the state, any political subdivision thereof or instrumentality, for occupancy or use by elderly persons shall be exempt from all general property taxation by the state, city, village or county, or by any public body or agency.

* * *

"(4) 'Nonprofit corporation or association' means any corporation or association incorporated under the laws of this state not otherwise exempt from general ad valorem real and personal property taxes operating a housing facility or project qualified, built or financed under section 202 of the national housing act of 1959, as amended."

As the statute indicates, a nonprofit corporation which owns and operates a home for the aged will not receive an exemption from property taxation unless the housing facility or project is "qualified, built or financed under section 202 of the national housing act of 1959, as amended". While we shall shortly discuss this limiting qualification in more detail, suffice it to say for the purpose of this issue that Hillside Terrace obviously does not qualify as a housing facility or project built or financed under § 202 of the National Housing Act of 1959, as amended.[3]

The second relevant statutory provision is § 9 of the General Property Tax Law which exempts from taxation the personal property of charitable, educational or scientific institutions incorporated under the laws of the State of Michigan. The pertinent provision, MCLA 211.9; MSA 7.9 provides:

"The following personal property shall be exempt from taxation, to wit:

"First, the personal property of charitable, educational and scientific institutions, incorporated under the laws of this state: Provided, That such exemptions shall not apply to secret or fraternal societies, but the personal property of all charitable homes of such societies shall be exempt."

Although, as we have stated, Hillside Terrace does not fall within the purview of § 7d of the General Property Tax Law, the question still remains as to whether Hillside Terrace may properly be categorized as a "charitable" institution under § 9. An analysis in terms of the six factors set forth earlier is necessary in order to resolve this question.

---

[3] 12 USC 1701q.

(1) *Imposition of fees.* As previously indicated, applicants to Hillside Terrace must possess sufficient funds to be able to pay both the life-lease fee and the monthly service charge. Plaintiff concedes that an applicant's ability to pay is very much a determining factor with respect to whether he will be admitted to Hillside Terrace. Although plaintiff states that a resident would not be required to leave if he became unable to pay the monthly service charge, it appears quite clear to this Court that the corporation tries to avoid such a situation by requiring all applicants to make a detailed disclosure of their financial condition. In short, we feel that the fee structure of Hillside Terrace indicates that its objectives were more commercial than charitable or benevolent.

(2) *Imposition of health requirements.* The health requirements imposed on applicants for residence at Hillside Terrace are even more strict than the financial requirements. Each applicant must undergo a complete physical examination to insure that he is in good health and that he will be able to care for himself in his room without the aid of nursing personnel. The admission requirements do not allow for the sick, the disabled and the destitute; quite the contrary, the requirements are designed to assure that such persons are not admitted. From the standpoint of its strict health requirements, Hillside Terrace cannot be regarded as a "charitable" institution since it does not benefit the general public without restriction.

(3) *Quality of accommodations and services.* The evidence presented in this case reveals that the standard of care, the quality of the accomodations, and the mode of life afforded the residents of Hillside Terrace made the quality of this housing facility higher than that ordinarily associated with a "charitable" institution.

(4) *Restrictions limiting admission to a particular class.* Admission to Hillside Terrace is without regard to either race or religious affiliation. However, due to the rather strict financial requirements, those of low income would not be able to qualify for admittance to Hillside Terrace.

(5) *Property leased to third parties.* This factor is not relevant to the present case since none of the property of Hillside Terrace is leased or rented to any third party for the purpose of obtaining revenue.

(6) *Purposes of institution as designated in its charter.* The articles of incorporation for Hillside Terrace indicate that the corporation was formed to provide "other institutions for the care of the mentally and physically handicapped, the sick, disabled, aged or destitute persons" as well as homes for the aged. The articles further state that the corporation's purpose is to use income for "benevolent, charitable and general welfare purposes". Despite these statements, it is clear to this Court that Hillside Terrace cannot properly be considered a charitable or benevolent institution. Rather, it appears to be more of a cooperative housing facility for elderly people in good financial and physical health than a charitable institution.

Const 1963, art VI, § 28 provides that final decisions, findings, rulings and orders of an administrative agency such as the tax commission are reviewable by the courts in terms of whether such decisions, etc., are supported by "competent, material and substantial evidence on the whole record to support the decision of the State Tax Commission affirming the denial of a property tax exemption to plaintiff.

2. *Has plaintiff been denied the equal protection of the laws guaranteed by the Michigan and*

*United States Constitutions because it has been held not exempt from taxation while the real and personal property owned by the Old Ladies' Home Association of Ann Arbor in operating its Anna Batsford Bach Home has been exempted from taxation?*

In attempting to show that it is entitled to an exemption, plaintiff seeks to compare Hillside Terrace to another facility in Ann Arbor known as the Anna Batsford Bach Home for which a tax-exempt status has been granted. However, a careful and thorough review of the record indicates that Hillside Terrace and the Anna Batsford Bach Home actually differ in many significant respects.

Hillside Terrace houses several times as many people as the Anna Batsford Bach Home, which is a converted house with rooms for only 17 elderly women. The Anna Batsford Bach Home is owned by the Old Ladies' Home Association of Ann Arbor, a Michigan nonprofit corporation. But unlike Hillside Terrace, the Bach Home is financed by charitable contributions as well as by a number of resident payment plans. Furthermore, unlike Hillside Terrace, the residents at the Bach Home do not pay the actual cost of their care at the facility. The difference between cost and resident payments is made up by principal and income withdrawn from an endowment fund which consists primarily of charitable contributions which have been invested in securities. Finally, perhaps the most important difference between these two homes is that women who have sufficient finances and are in condition to maintain themselves outside the Batsford Bach Home are not admitted to the home. Testimony indicates that the women who were admitted to the Bach Home were there because they were unable to live without supervision and because they needed help the most.

After reviewing these facts, we have no difficulty in concluding that plaintiff's claim of a denial of equal protection is without merit. As plaintiff readily concedes the equal protection claim is only meritorious where something in the nature of a benefit is simultaneously granted and denied to members of the same class. The differences between these two homes are of sufficient magnitude so as to preclude any argument that they are of the same class.

3. *Has plaintiff been denied the equal protection of the laws and deprived of due process of law under the Michigan and United States Constitutions because the exemptions from general property taxation under § 7d is limited to "a housing facility or project qualified, built or financed under § 202 of the National Housing Act of 1959, as amended"?*

Plaintiff claims that the Michigan Legislature, by limiting the exemption provided by § 7d(1) of the General Property Tax Act to nonprofit corporations which have obtained financing under § 202 of the National Housing Act, has made the exemption dependent of action by the Secretary of Housing and Urban Development, and that limiting the exemption in this manner is invalid as an unconstitutional delegation of power to a Federal official to decide who receives the exemption. We disagree.

The Federal official does not make a determination as to who shall receive the exemption. He merely determines which nonprofit corporations are eligible to receive Federal financing under § 202. Furthermore, this provision for Federal financing of housing for the elderly was no doubt created for the lowest income type of housing, since it is almost impossible to obtain sufficient financing for these projects from other sources. In

other words, our Legislature intended that the tax exempt status be extended to the lowest income type of housing. The Legislature has merely created a special category of low-income housing for the elderly which is to be granted tax-exempt status. We perceive neither discrimination nor any violation of either equal protection or due process in the creation of this special category of low-income elderly housing for exemption from taxation.

Affirmed.

All concurred.